_____

No. 17-1166 (L)
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

**EDWARD MICHAEL NERO,** *et al.*,

*Plaintiffs-Appellees*,

**v.**

**MARILYN MOSBY**,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the District of Maryland
(Marvin J. Garbis, District Judge)
_____

**MOTION FOR STAY PENDING APPEAL**
_____

BRIAN E. FROSH
Attorney General of Maryland

KARL A. POTHIER
Assistant Attorney General
120 West Fayette Street, 5th Floor
Baltimore, Maryland 21201
410-230-3135 (telephone)
410-230-3143 (facsimile)
karl.pothier@maryland.gov

March 31, 2017                    Attorneys for Appellant Mosby

**TABLE OF CONTENTS**

INTRODUCTION ................................................................1

PROCEDURAL BACKGROUND .......................................1

LEGAL STANDARD ...........................................................7

ARGUMENT ......................................................................7

I.    STATE'S ATTORNEY MOSBY'S STRONG LIKELIHOOD OF SUCCESS ON APPEAL SUPPORTS A STAY ...............................................7

      A.    State's Attorney Mosby Is Absolutely Immune from All State and Federal Claims That Arise from Plaintiffs' Arrest and Prosecution ..............................................7

      B.    State's Attorney Mosby Enjoys Qualified Immunity from Plaintiffs' Fourth Amendment Claims ................................................11

      C.    State's Attorney Mosby Enjoys Statutory Immunity as to All State Law Claims..............................................15

II.   STATE'S ATTORNEY MOSBY WILL SUFFER IRREPARABLE HARM IF THIS MATTER IS NOT STAYED PENDING APPEAL....................................17

III.  PLAINTIFFS WILL NOT BE HARMED BY THE REQUESTED STAY .....................19

IV.   THE PUBLIC INTEREST WILL BE SERVED BY THE STAY .................................19

CONCLUSION .................................................................21

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................6, 17, 19

*Barbre v. Pope*, 935 A.2d 699 (Md. 2007) ...............................................................16

*Buckley v. Fitzsimmons,* 509 U.S. 259 (1993) ....................................................*passim*

*Burns v. Reed*, 500 U.S. 478 (1991) ..................................................................8, 20

*Cooper v. Rodriguez*, 118 A.3d 829 (Md. 2015) ......................................................16

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ..........................................................20

*Davis v. City of Greensboro, N.C.*, 770 F.3d 278 (4th Cir. 2014) ............................6

*Dixon v. Edwards*, 290 F.3d 699 (4th Cir. 2002) .....................................................6

*Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2014) ...............................................5, 12

*Gill v. Ripley*, 724 A.2d 88 (Md. 1999) ...................................................................8

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982) ................................6

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................12

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ................................................................7

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ..............................................................20

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ..........................................................*passim*

*Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970) ......................................................7

*Lyles v. Spark*, 79 F.3d 372 (4th Cir. 1996) .............................................................9

*Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992) ............................................14

ii

*May v. Sheahan*, 226 F.3d 876 (7th Cir. 2000)........................................................6

*Miller v. Prince George's Cnty., Md.,* 475 F.3d 621 (4th Cir. 2007).....................13

*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009)...........................14

*Schall v. Martin*, 467 U.S. 253 (1984).....................................................................20

*Shoultes v. Laidlaw*, 886 F.2d 114 (6th Cir. 1989).................................................8

*Siegert v. Gilley*, 500 U.S. 226 (1991)....................................................................20

*Snider v. Seung Lee*, 584 F.3d 193 (4th Cir. 2009) ........................................ 14-15

*Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997)....................................*passim*

*Thacker v. City of Hyattsville*, 762 A.2d 172 (Md. App. 2000) .............................16

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) .....................................................9

*Wadkins v. Arnold*, 214 F.3d 535 (4th Cir. 2000)..................................................11

*Wag More Dogs, LLC v. Cozart,* 680 F.3d 359 (4th Cir. 2012)..............................1

*Will v. Hallock*, 546 U.S. 345 (2006)................................................................19, 20

*Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395 (4th Cir. 2006).............................14

**Statutes**

Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) .........................................................15

**Rules**

Md. Rule 4-102(a)....................................................................................................12

Md. Rule 4-211(b)(1)...............................................................................................12

Md. Rule 4-212(a)....................................................................................................13

## INTRODUCTION

The defendant, Baltimore City State's Attorney Marilyn J. Mosby, hereby moves, under Federal Rule of Appellate Procedure 8(a)(2), for an immediate stay of the proceedings below pending the resolution of her appeal of the district court's order (Ex. 1) denying in part her motions to dismiss the complaints filed against her by five police officers. The district court declared that, based upon the allegations of the complaint, State's Attorney Mosby is not entitled to absolute, qualified, or statutory immunity from the claims brought by the officers, which arise from Ms. Mosby's decision to prosecute them for their role in the arrest and detention of an individual who sustained fatal injuries while being transported in police custody. This Court should grant the stay because denying it will effectively and permanently deprive prosecutor Mosby of the protections these immunities afford her while this Court reviews and considers *de novo*[1] the important issues presented by this appeal.

## PROCEDURAL BACKGROUND

The five plaintiffs are Baltimore City police officers who, along with one other officer, were arrested and criminally charged following the death of Freddie Gray, who sustained fatal injuries while being transported in a police van after his

---

[1] The appeal is from a decision denying a motion to dismiss, which this Court reviews *de novo*. *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 364 (4th Cir. 2012).

arrest on April 12, 2015. According to their amended complaints (Exs. 2-4),[2] officers Miller, Nero, and Rice participated in Gray's arrest for possession of an allegedly illegal knife, and each had a role in the initial placement of Gray in the van. (Exs. 2-3.) Officers Porter and White subsequently observed and encountered Gray in the van at two separate stops prior to the final one, when Gray was found unresponsive. (Ex. 4.)

Plaintiffs allege that on May 1, 2015, Samuel Cogen, a Major with the Office of the Sheriff for Baltimore City, at the direction or upon the advice of either Ms. Mosby or one of her subordinates, submitted applications for statements of charges based on the five officers' conduct during the arrest and detention of Gray. (Ex. 2 ¶¶ 61, 76-77; Ex. 3 ¶¶ 30, 45-46; Ex. 4 ¶¶ 68, 101-02.) The applications "stated that . . . Gray's death was ruled a homicide by the Office of the Chief Medical Examiner" (Ex. 2 ¶ 62; Ex. 3 ¶ 31; Ex. 4 ¶ 69), and sought the following charges:

    (i)    two counts of second degree assault, two counts of misconduct in office, and one count of false imprisonment against Miller and Nero  (Ex. 2 ¶ 61);

    (ii)    manslaughter, reckless endangerment, second degree assault, and two counts of misconduct in office against Rice (Ex. 3 ¶ 30); and

---

[2]  Plaintiffs brought their claims in three separate cases that were consolidated by the district court on February 8, 2017.

(iii)   involuntary manslaughter, second degree assault, and misconduct in office against Porter and White, as well as manslaughter against White (Ex. 4 ¶ 68).

All five officers were charged and arrested that same day (Ex. 2 ¶ 63; Ex. 3 ¶ 32; Ex. 4 ¶ 71), and Ms. Mosby "gave a press conference concerning her office's decision to press charges," during which she "read" the applications "and spoke in a divisive and inciting manner" (Ex. 2 ¶¶ 64-65; Ex. 3 ¶¶ 33-34; Ex. 4 ¶¶ 72-73).

Within a year, and while the charges against them were pending, Plaintiffs sued prosecutor Mosby for their arrests and prosecutions, claiming that the charges against them were not supported by probable cause. Plaintiffs Porter and White, for instance, complain that the applications for criminal charges improperly:

(i)     "omitted that a first-hand witness [had observed that] not only was . . . Gray conscious during much of the ride, but was banging his head against the wall" (Ex. 4 ¶ 89);

(ii)    "omitted that another witness . . . saw . . . Gray in the van and . . . not . . . in any medical distress" (*id*. ¶ 90);

(iii)   "omitted that the medics who came onto the scene and examined Mr. Gray after Plaintiff White called them not once, but twice, determined that Freddie Gray's neck was 'Normal'" (*id*. ¶ 91);

(iv)    "withheld … that not even the medical professionals that arrived on the scene were able to determine that Gray had suffered any serious physical trauma" (*id*.); and

(v)     misrepresented that "Plaintiffs were under a legal duty to restrain . . . Gray in a seatbelt when, in fact, no such legal duty existed" (*id*. ¶ 87.a.).

3

Miller, Nero, and Rice make similar allegations (Ex. 2 ¶ 59, 73-74; Ex. 3 ¶ 28, 42-43), and further allege that the knife found on Gray was illegal, and thus justified his arrest; that the State's Attorney's Office purportedly "had several cases pending against persons" for possession of the same knife; and that the BCPD itself allegedly had "informed" that Office that Gray's knife was illegal. (Ex. 2 ¶¶ 68-70; Ex. 3 ¶¶ 37-39.) All Plaintiffs assert that their later indictments were the result of improper conduct before the grand jury, including, among other things, the use of "false and misleading statements." (Ex. 2 ¶ 82; Ex. 3 ¶ 51; Ex. 4 ¶ 104.)

Plaintiffs sue Ms. Mosby under 42 U.S.C. § 1983, asserting that she had deprived them of their "freedom from the deprivation of liberty without due process of the law, as guaranteed by the Fourteenth Amendment to the [U.S.] Constitution," as well as their "freedom from arrest without probable cause, as guaranteed by the Fourth Amendment to the [U.S.] Constitution . . . ." (Ex. 2 ¶¶ 120, 134; Ex. 3 ¶ 72; Ex. 4 ¶ 204.) Plaintiffs also bring analogous State law claims under Articles 24 and 26 of the Maryland Declaration of Rights, as well as common law claims of false arrest, false imprisonment, malicious prosecution, abuse of process, and civil conspiracy. (Ex. 2 ¶¶ 84-117; Ex. 3 ¶¶ 53-69; Ex. 4 ¶¶ 171-202, 217-39.) Lastly, Plaintiffs sue Ms. Mosby for defamation and invasion of privacy/false light for her statements at the May 1, 2015 press conference, including her *verbatim* quotations of certain statements contained in the

4

applications, such as the legality of the knife found on Gray.  (Ex. 2 ¶¶ 66-67, 146-61; Ex. 3 ¶¶ 35-36, 84-94; Ex. 4 ¶¶ 75-76, 127-37; 155-170.)

Ms. Mosby moved to dismiss on the grounds that she enjoys absolute prosecutorial immunity and qualified immunity from the claims relating to plaintiffs' arrest and detention, and State statutory immunity from all State law claims.  On January 6, 2017, the district court issued a Memorandum and Order, which it corrected on January 27, 2017, granting in part and denying in part the motions and specifically rejecting Ms. Mosby's immunity assertions.[3]  (Ex. 1.)  As a result, Plaintiffs' claims against her under the Fourth Amendment and Article 26, as well as their claims of malicious prosecution, defamation, and invasion of privacy/false light, remain pending.  (*Id*. at 46.)

Because each of the asserted immunities rejected by the district court is an immunity from suit, on February 3, 2017, Ms. Mosby noted interlocutory appeals of the district court's order under the collateral order doctrine.[4]  On February 6,

---

[3] The district court found that Ms. Mosby enjoys absolute immunity only from Plaintiffs' claims relating to the presentation of evidence before the grand jury. (Ex. 1 at 38.)

[4] This Court "[has] appellate jurisdiction under the collateral order doctrine to review a district court's denial of those claims to which defendants assert immunities from suit." *Evans v. Chalmers*, 703 F.3d 636, 655 (4th Cir. 2012) (quotation omitted); *see Springmen v. Williams*, 122 F.3d 211, 212 (4th Cir. 1997) (reviewing denial of prosecutor's motion to dismiss for absolute immunity on an immediate interlocutory appeal).  The Court may exercise its jurisdiction when, as here, the rejection of the immunity defense turns on "an issue of law," such as in "a

2017, she moved the district court to stay its proceedings pending the outcome of her appeal. (Ex. 5-7.) On March 20, 2017, the district court denied the request (Ex. 8), and ordered that the matter proceed on the claims against Ms. Mosby, notwithstanding that, as a matter of law, it currently does not have jurisdiction over those very same claims.[5] *See Dixon v. Edwards*, 290 F.3d 699, 709 n.14 (4th Cir. 2002) (noting that "[a]s a general proposition, the timely filing of a notice of appeal confers jurisdiction in the court of appeals 'and divests the district court of its control over those aspects of the case *involved in the appeal*'") (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)) (emphasis supplied); *May v. Sheahan*, 226 F.3d 876, 880 (7th Cir. 2000) ("an [interlocutory] appeal [based on immunity] divests a district court of the authority to order discovery or conduct other burdensome proceedings" because those are necessarily aspects of the case involved in the appeal). On March 27, 2017, the district court ordered that discovery between and among *all* parties commence, in accordance with a discovery plan submitted by the parties on order of the court. (Ex. 9.)

---

ruling on the sufficiency of the pleadings at the motion-to-dismiss stage . . . ." *Davis v. City of Greensboro, N.C.*, 770 F.3d 278, 282 (4th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009)) (quotation omitted).

[5] Major Cogen also moved to dismiss the complaints, and the district court denied those motions as well. Major Cogen did not note appeals of the district court's rulings.

## LEGAL STANDARD

The factors governing a request for stay pending appeal are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970).

## ARGUMENT

I.   **STATE'S ATTORNEY MOSBY'S STRONG LIKELIHOOD OF SUCCESS ON APPEAL SUPPORTS A STAY.**

A.   **State's Attorney Mosby Is Absolutely Immune from All State and Federal Claims That Arise from Plaintiffs' Arrest and Prosecution.**

The district court held that Ms. Mosby is not entitled to absolute prosecutorial immunity as to Plaintiffs' claims that she "[p]rovided erroneous legal advice to Cogen" and "[c]aused false statements in the Application for Statement of Charges." (Ex. 1 at 33-37.)  However, because the specific allegations that support these claims are rooted in Ms. Mosby's advocacy function, as a matter of law they may not serve as the basis for bringing suit, let alone imposing liability, against her.

The district court based its contrary conclusion on Ms. Mosby's statement at the May 1, 2015 press conference that she and her Office had conducted an

7

independent investigation into the circumstances surrounding the arrest and detention of Mr. Gray. (Ex. 1 at 37.) Focusing on that statement, which does not implicate the actual function Ms. Mosby was engaged in when undertaking the actions at issue in Plaintiffs' claims – her Office's alleged drafting of the Application for Statement of Charges and its marshalling of a peace officer (Major Cogen) to file the Application – the district court improperly concluded that those actions must necessarily have been "investigative" in nature and, therefore, not subject to absolute immunity.

As the Sixth Circuit has observed, however, a focus on factors other than function "misapprehends the nature of prosecutorial immunity," because "[w]hether conduct is protected depends not on formalistic labels, but on the function it serves." *Shoultes v. Laidlaw*, 886 F.2d 114, 118 (6th Cir. 1989). Under this analysis, which focuses on the function being performed by the prosecutor at the time of the conduct, *see Burns v. Reed*, 500 U.S. 478 (1991), "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993*). See also Gill v. Ripley*, 724 A.2d 88, 96 (Md. 1999) (1999) ("We conclude, therefore, as a matter of Maryland common law, that prosecutors enjoy

8

absolute immunity with respect to claims arising from their role in the judicial process.").

Only "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* Therefore, "[t]he focus of [absolute] immunity analysis … is 'on the *conduct* for which immunity is claimed, not on the harm that the conduct may have caused or the question [of] whether it was lawful.'" *Lyles v. Spark*, 79 F.3d 372, 377 (4th Cir. 1996) (emphasis in original) (quoting *Buckley*, 509 U.S. at 271).

Significantly, should the conduct *relate to* a prosecutor's advocacy, regardless of whether it also implicates other investigative or administrative functions, it is protected by absolute immunity. *Van de Kamp v. Goldstein*, 555 U.S. 335, 339 (2009) (extending absolute immunity to "claims that the prosecution failed to disclose impeachment material . . . due to: (1) a failure properly to train prosecutors, (2) a failure properly to supervise prosecutors, or (3) a failure to establish an information system containing potential impeachment material about informants").

A review of Plaintiffs' allegations demonstrates why the functional analysis supports Ms. Mosby's immunity defense. In short, although Ms. Mosby mentioned at the press conference that her office conducted an investigation, the

9

investigation is not the source of Plaintiffs' claims. Instead, the relevant alleged acts and omissions relate to the assessment and evaluation of evidence and the drawing of legal conclusions, which necessarily involve the exercise of professional judgment of the prosecutor as advocate. *See Kalina v. Fletcher*, 522 U.S. 118, 130 (1997) ("characterization [as advocacy] is appropriate for [prosecutor's] drafting of the certification, her determination that the evidence was sufficiently strong to justify a probable-cause finding, her decision to file charges, and her presentation of the information and the motion to the court"). These tasks are, therefore, squarely within the advocacy function and not investigative. *See Buckley*, 509 U.S. at 273 (in the functionality analysis, investigative behaviors are those that are "normally performed by a detective or police officer"). Thus, all of the acts, as well as their subsequent manifestation either as purportedly false statements or wrongful omissions in the narrative found in the criminal complaint (here, the application for statement of charges), are subject to absolute immunity. *Kalina*, 522 U.S. at 130 ("Indeed, even the selection of the particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required the exercise of the judgment of the advocate.").

It follows that absolute immunity also protects Ms. Mosby from suit with regard to her and her Office's interactions with Major Cogen. Nowhere do plaintiffs allege any facts suggesting that the State's Attorney's Office worked with

10

Cogen in an investigative capacity.  On the contrary, Plaintiffs assert that the two worked together solely to implement the *charging* decision that had been made by the State's Attorney's Office.  (Ex. 2 ¶¶ 76-77; Ex. 3 ¶¶ 45-46; Ex. 4 ¶¶ 101-02.) Ms. Mosby's conduct in that regard is protected by absolute immunity.  *See Springmen*, 122 F.3d at 213-14 (rejecting plaintiff's assertion that a Maryland prosecutor's absolute immunity from suit for a decision to charge may be abrogated when that decision manifests itself as instructions to a police officer on the contents of an application for statement of charges); *Kalina*, 522 U.S. at 130; *Wadkins v. Arnold*, 214 F.3d 535, 538 n.5 (4th Cir. 2000) (in § 1983 action by arrestee against detective, local prosecutor's advice to detective authorizing the initiation of charges was "protected by absolute immunity" under *Buckley* and *Springmen*).  Ms. Mosby is thus likely to succeed on the merits of her claim that she is entitled to the protection of absolute immunity.

**B.    State's Attorney Mosby Enjoys Qualified Immunity from Plaintiffs' Fourth Amendment Claims.**

In addition to absolute immunity, Ms. Mosby is also protected by qualified immunity from Plaintiffs' federal claims.   Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

11

would have known." *Springmen*, 122 F.3d at 214 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In denying her motion to dismiss, the district court did not address at all Ms. Mosby's entitlement to qualified immunity in relation to Plaintiffs' Fourth Amendment malicious prosecution claim.  (Ex. 1 at 41-45.)  Rather, the Court conducted its qualified immunity analysis solely within the confines of addressing what it interpreted as a Fourth Amendment wrongful arrest claim.  (*Id*. at 44.) However, Ms. Mosby has an entitlement to qualified immunity with respect to the malicious prosecution claim that must be analyzed separately.  *See Evans v. Chalmers*, 703 F.3d at 647 (setting forth elements of § 1983 malicious prosecution claim).

As a matter of law, the document that Plaintiffs contend contained false statements and omissions is, first and foremost, a document that begins the criminal proceedings, as it is, by its express terms, a request for the issuance of a charging document.  *See* Md. Rule 4-102(a) ("Charging document" means a written accusation that a defendant has committed an offense . . . [and i]t includes a . . . statement of charges"); Md. Rule 4-211(b)(1) (authorizing the filing of statement of charges by judicial officer "upon [a] written application containing an affidavit showing probable cause that the defendant committed the offense charged").  The fact that the document also serves as an application for a warrant

12

or criminal summons, *see* Md. Rule 4-212(a), does not change the essential and undisputed truth that the application *initiates* a criminal proceeding, and that a prosecutor's involvement with its drafting (as alleged here) is at a minimum protected by qualified immunity. *Springmen*, 122 F.3d at 213-14.

Moreover, while a neutral magistrate's issuance of an arrest warrant upon an application by a *police officer* will not "shield an officer when . . . the underlying affidavit includes deliberate and reckless misstatements and omissions," *Miller v. Prince George's Cnty.*, 475 F.3d 621, 632 (4th Cir. 2007), such a magistrate's action *will* "support[] the reasonableness" of the prosecutor's interpretation of law and facts, as that interpretation is articulated within an application for statement of charges, *Springmen*, 122 F.3d at 214.[6] Thus, the findings of probable cause by the district court's judicial officer (Ex. 10 at 6-7; Ex. 11 at 6, Ex. 12 at 6; Ex. 13 at 6; Ex. 14 at 6) and the circuit court's grand jury (Ex. 15 at 1-3; Ex. 16 at 1-3; Ex. 17 at 1-3; Ex. 18 at 1-3; Ex. 19 at 1-3), as well the circuit court's determinations during the criminal trials of Plaintiffs Nero, Porter, and Rice that the evidence against them was sufficient to survive a motion for judgment of acquittal (Ex. 16 at

---

[6] Even though this Court in *Springmen* found that the prosecutor was entitled to absolute immunity in relation to her probable cause determination, it nevertheless addressed the applicability of qualified immunity due to its awareness that *Kalina* was pending in the Supreme Court. *Id.*

6; Ex. 17 at 6; Ex. 18 at 6),[7] are highly probative in the analysis of Ms. Mosby's qualified immunity defense. *Id.*

A criminal defendant may not overcome a prosecutor's assertion of qualified immunity based on that defendant's arrest where there was a later grand jury indictment, and where, as with Plaintiffs Nero, Porter, and Rice, the criminal trial judge found, at the close of the State's case, that there was sufficient evidence for a reasonable juror to convict. The district court's finding to the contrary is in conflict with the admonition in qualified immunity jurisprudence that when exercising discretion, a public official may be liable only when he or she transgresses a bright line. *See Springmen*, 122 F.3d at 214 ("'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'") (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). Ms. Mosby is thus likely to succeed on her assertion of qualified immunity claim with respect to Plaintiffs' claims under 42 U.S.C. § 1983.[8]

---

[7] The referenced exhibits were also exhibits to the dispositive motions below, and may be considered by this Court in its review of the legal issues presented here. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176 (4th Cir. 2009) ("[i]n reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record"); *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 397 (4th Cir. 2006) (court filings are public records of which a federal court may take judicial notice).

[8] Because a Fourth Amendment malicious prosecution claim includes the element of "an unreasonable seizure," *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th

14

### C.    State's Attorney Mosby Enjoys Statutory Immunity As to All State Law Claims.

In addition to absolute immunity, Ms. Mosby has statutory immunity from Plaintiffs' State law claims because Plaintiffs failed to plausibly allege facts demonstrating that she acted with either actual malice or gross negligence when her Office initiated the charges against Plaintiffs and when she subsequently notified the general public of the same. (Ex. 1 at 39-41.)

Under Maryland law, State personnel are immune from suit for a tortious act or omission made within the scope of public duties and without malice or gross negligence. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-522(b). In rejecting that defense in relation to Plaintiffs' Article 26 and malicious prosecution claims, the district court found that while Plaintiffs did not sufficiently allege malice (*see* Ex. 1 at 41 (stating that "[t]here is no allegation that Defendants' actions were motivated by hate, or an intent to injure")), they nevertheless "presented a plausible claim that Defendants acted with utter indifference to Plaintiffs' rights to be free from unreasonable seizure and deprivations of liberty, i.e., with gross negligence" (*id.*). But the conduct that serves as the basis for this finding is the mere initiation of the criminal proceedings themselves, which is conduct fundamentally related to a prosecutor's advocacy function. Facially, then, it alone

Cir. 2009), Ms. Mosby is also entitled to qualified immunity from plaintiffs' wrongful arrest claims.

15

cannot serve as a basis to conclude that prosecutor Mosby "intentional[ly] fail[ed] to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another," or possessed a "thoughtless disregard of the consequences without the exertion of any effort to avoid them."[9]  *Cooper v. Rodriguez*, 118 A.3d 829, 845-46 (Md. 2015) (quoting *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007)).

The district court's decision in relation to statutory immunity also did not reach Plaintiffs' defamation/invasion of privacy claims.  (Ex. 1 39-41.)  Because there was no finding that would support denying Ms. Mosby's statutory immunity in relation to those claims, the district court should have dismissed them.  Even so, had the district court concluded that the complaint *did* allege facts demonstrating that Ms. Mosby acted with malice or gross negligence, such a conclusion also would have been erroneous.  The complaints contain no plausible allegations that in doing what State and federal prosecutors do on a routine basis – notifying the general public of the filing of criminal charges or indictments – the State's Attorney acted in a grossly negligent manner or "with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiffs."  *Thacker v. City of Hyattsville* 762 A.2d 172, 189 (Md. App. 2000)

---

[9]  Indeed, after the filing of the applications for statements of charges, probable cause to support the charges was found *repeatedly* by other persons and entities within the criminal justice system.

16

(malice standard).  Neither actionable malice nor gross negligence may or should be inferred from a prosecutor's public *verbatim* recitation of what was stated in a criminal charging document like the applications for statements of charges involving Plaintiffs.  Those public statements, as well as the remainder of the contextual statements made at the press conference (Ex. 20), are consistent with the kind of public statements that prosecutors, in the exercise of their discretion and authority, may make.  Ms. Mosby is thus likely to succeed on the merits of her statutory immunity defense with respect to Plaintiffs' State law claims.

## II.  STATE'S ATTORNEY MOSBY WILL SUFFER IRREPARABLE HARM IF THIS MATTER IS NOT STAYED PENDING APPEAL.

Ms. Mosby enjoys immunity from suit, not just from liability, in relation to *all* claims that remain pending against her, and *all* of those claims are now before this Court.  A stay of the district court proceedings is, therefore, warranted because without it, Ms. Mosby will have to defend those same claims in the district court and thereby irrevocably suffer the very harms that the immunities are designed to prevent.  The Supreme Court has admonished that the immunity is designed "to free officials from the concerns of litigation, including avoidance of disruptive discovery, . . . [because l]itigation exacts heavy costs in terms of efficiency and expenditures of valuable resources that otherwise might be directed to the proper execution of the work of the government."  *Iqbal*, 556 U.S. at 685.  Requiring Ms. Mosby to participate as a party in the proceedings below while her appeal on the

17

outstanding claims against her is pending wholly undermines her right to be free from the burdens of litigation.

Nor would Ms. Mosby's right to "immunit[y] from suit," *Davis*, 770 F.3d at 282, be protected if the proceedings in the district court were permitted to continue as to the claims against Major Cogen. But for the defamation and invasion of privacy/false light claims, Plaintiffs' claims against Major Cogen are essentially the same and share the same factual predicates as those brought against Ms. Mosby. (*See, e.g.*, Ex. 2 ¶¶ 76-77 ("Defendant Mosby instructed Defendant Cogen to file the Application for Statement of Charges," and "provided legal advice to Defendant Cogen" that "probable cause existed to charge and arrest" Miller and Nero in violation of their constitutional rights)). Without question then, the discovery Plaintiffs undertake as to Cogen will encroach into the intertwined claims against Ms. Mosby. That encroachment will necessarily impose a litigation burden she should not be required to bear while this Court considers her claims of absolute, qualified, and statutory immunity. As the Supreme Court has observed:

> It is no answer to these concerns [that support qualified immunity] to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

18

*Iqbal*, 556 U.S. at 685-85. Thus, Ms. Mosby will suffer irreparable harm – and be denied the benefit of the immunity from suit she claims – if the matter proceeds in the district court in any fashion before her appeal is resolved.

### III.    PLAINTIFFS WILL NOT BE HARMED BY THE REQUESTED STAY.

This case is at an early stage. It was filed less than a year ago based on events that occurred merely a year before that. After service of the complaint, initial dispositive motions were filed and expeditiously heard and resolved just this past January. Discovery has just commenced. (Ex. 9.) There has been no delay in these proceedings. Plaintiffs, therefore, cannot credibly demonstrate any appreciable, let alone substantial, harm that will or potentially could result from the requested stay.

### IV.    THE PUBLIC INTEREST WILL BE SERVED BY THE STAY.

The public interests that are implicated by this stay request are numerous and demand the resolution of Ms. Mosby's interlocutory appeal before this matter moves forward in any manner at the trial court level.

Immunities from suit exist to protect "some particular value of a high order." *Will v. Hallock*, 546 U.S. 345, 352 (2006) (in rejecting appellate jurisdiction over trial court's denial of motion to dismiss based on procedural bar, discussing absolute and qualified immunities and why they are important and immediately appealable). For absolute prosecutorial immunity, for example, that

19

value is the maintenance of the overall integrity of the criminal justice system itself, which is compromised when a prosecutor is afforded anything less than absolute immunity in the exercise of his or her duties as an advocate.  As the Supreme Court has explained:

> The Court in *Imbler* [*v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984 (1976)] declined to accord prosecutors only qualified immunity because, among other things, suits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate," *id.,* at 425, 96 S. Ct., at 992; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law, *ibid.;* prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity, *ibid.;* and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system," *id.,* at 427-428, 96 S. Ct., at 993-994.

*Burns*, 500 U.S. at 485-86.  In relation to qualified immunity, the values are the "preserv[ation of] the efficiency of government and the initiative of its officials," *Will*, 546 U.S. at 352,[10] which are unquestionably particularly pronounced in the context of claims against the chief prosecutor of a major American  city.  *See Schall v. Martin*, 467 U.S. 253, 264 (1984) (noting that "[t]he legitimate and compelling state interest in protecting the community from crime cannot be

---

[10] "There is a strong public interest in protecting public officials from the costs associated with the defense of damages actions," *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998), so "avoidance of disruptive discovery is one of the very purposes for the official immunity doctrine," *Siegert v. Gilley*, 500 U.S. 226, 236 (1991).

doubted") (citations and quotation marks omitted). Those same values are also inherent in State statutory immunity, whereby the State essentially confers its sovereign immunity on its personnel acting in furtherance of its business and without malice or gross negligence. Granting the requested stay of these proceedings during the pendency of the interlocutory appeal will avoid the premature and irretrievable loss of the protections from suit that the law affords a prosecutor like Ms. Mosby and, in so doing, will preserve the values upon which the asserted immunities are based. The public also has a substantial interest in having Ms. Mosby's immunity assertions resolved as efficiently, expeditiously, and fairly as possible, which is served by her unfettered presentation of those defenses to the appellate court.

## CONCLUSION

The Court should stay the proceedings in the district court pending the full and final resolution of this appeal.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland


_____/s/_____

KARL A. POTHIER
Assistant Attorney General

21

120 West Fayette Street, 5th Floor
Baltimore, Maryland  21201
410-230-3135 (telephone)
410-230-3143 (facsimile)
karl.pothier@maryland.gov

Attorneys for Appellant Mosby

## LOCAL RULE 27(a) STATEMENT BY COUNSEL

All counsel for the other parties to this appeal have been informed of the intended filing of this Motion.  Counsel have advised that they intend to file a response in opposition.

_____/s/_____
KARL A. POTHIER
Assistant Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of March, 2017, copies of the foregoing Motion for Stay Pending Appeal were served electronically via the Court's CM/ECF on:

David Ellin, Esquire
Law Office of David Ellin, P.C.
154 Westminster Pike
Reisterstown, Maryland, 21136

(Counsel for Plaintiff-Appellee Rice)

- and -

22

- and -

Michael E. Glass, Esquire
The Michael Glass Law Firm
201 N. Charles Street, Suite 1900
Baltimore, Maryland, 21201

(Counsel for Plaintiffs-Appellees Porter and White)

- and -

Joseph T. Mallon, Jr., Esquire
Mallon & McCool, LLC
300 East Lombard Street, Suite 815
Baltimore, Maryland, 21202

(Counsel for Plaintiffs-Appellees Miller and Nero)

- and –

Brandy A. Peeples, Esquire
Law Office of Brandy A. Peeples, P.C.
47 East All Saints Street
Frederick, Maryland, 21701

(Counsel for Plaintiff-Appellee Rice)

- and –

Andrew J. Toland, III, Esquire
Toland Law, LLC
P.O. Box 1130
Sparks, Maryland, 21152

(Counsel for Plaintiffs-Appellees Miller and Nero)

_____/s/_____
KARL A. POTHIER
Assistant Attorney General

23