—————————————

**No. 17-1166 (L)**

—————————————

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

—————————————

**EDWARD MICHAEL NERO, et al.**

*Plaintiffs-Appellees,*

**v.**

**MARILYN MOSBY**

*Defendant-Appellant.*

—————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(The Honorable Marvin J. Garbis, District Judge)

—————————————

**RESPONSE TO MOTION FOR STAY PENDING APPEAL**

—————————————

Joseph T. Mallon, Jr.
Mallon & McCool, LLC
300 East Lombard Street, Suite 815
Baltimore, Maryland 21202
Phone:  (410) 727-7887
Fax:    (410) 727-4770
jmallon@mallonandmccool.com
*Counsel for Appellees Edward Michael
Nero and Garrett Edward Miller*

Andrew J. Toland III
Toland Law LLC
P.O. Box 1130
Sparks, Maryland 21152
Phone:  (410) 499-5656
andytoland@msn.com
*Counsel for Appellees Edward Michael
Nero and Garrett Edward Miller*

David Ellin
Law Office of David Ellin PC
154 Westminster Pike
Reisterstown, Maryland 21136
(410) 833-0044
(410) 833-0442 (fax)
dellin@ellinlaw.com
*Counsel for Appellee Brian Scott Rice*

Brandy A. Peeples
Law Office of Brandy A. Peeples, P.C.
47 East All Saints Street
Frederick, Maryland 21701
410-327-9614 (telephone)
866-277-7137 (facsimile)
brandy@peeples-law.com
*Counsel for Appellee Brian Scott Rice*

Michael E. Glass
The Michael Glass Law Firm
201 N. Charles Street, Suite 1901
Baltimore, Maryland 21201
(410) 779-0600
(410) 814-4604
mglass@mglasslaw.com
*Counsel for Appellees Alicia White
and William Porter*

# **Contents**

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND....................................................................................1

  1.  Gray's Arrest (Nero, Miller, Rice) ...................................................................1

  2.  The Transport of Gray ......................................................................................2

      a.  First Stop (Nero, Miller, and Rice) ..............................................................3

      b.  Second Stop ...................................................................................................3

      c.  Third Stop (Porter) ........................................................................................3

      d.  Fourth Stop (Porter, White)...........................................................................4

      e.  Arrival at Western District (White and Porter) ............................................5

  3.  Gray's Death.....................................................................................................5

  4.  The Investigation and Charges .........................................................................5

  5.  Mosby's Press Conference ...............................................................................7

  6.  Grand Jury Presentation ...................................................................................8

  7.  Prosecutions.....................................................................................................9

PROCEDURAL BACKGROUND.............................................................................9

ARGUMENT ...........................................................................................................11

  REQUIREMENTS FOR A STAY PENDING APPEAL ....................................11

  LIKELY TO PREVAIL ON APPEAL ................................................................12

  MS. MOSBY WILL NOT SUFFER IRREPARABLE HARM ...........................18

  APPELLEES WILL BE HARMED BY A STAY ...............................................20

  PUBLIC INTEREST ...........................................................................................21

CONCLUSION ........................................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Alice L. v. Dusek*, 492 F.3d 563 (5th Cir. 2007) ........................................19

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)... 19, 20

*Behrens v. Pelletier*, 516 U.S. 299, 312, 116 S. Ct. 834, 841, 133 L. Ed. 2d 773 (1996)........................................................................................................18

*Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co*., 550 F.2d 189 (4th Cir. 1977) ................................................................................................11

*Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606,  125 L. Ed. 2d 209 (1993) ........................................................................................... 13, 14, 15

*Burns v. Reed*, 500 U.S. 478, 111 S.Ct., 1934 (1991) ...................................... 13, 15

*Cooper v. Rodriguez*, 443 Md. 680 (2015) ................................................17

*Forrester v. White*, 484 U.S. 219 at 229, 108 S.Ct. 538 (1988) ............................13

*Goldstein v. Moatz*, 364 F.3d 205, 214 (4th Cir. 2004) .........................................15

*Graham v. Gagnon*, 831 F.3d 176 (4th Cir. 2016) ...................................................16

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982)...................................14

*Hilton v. Braunskill*, 481 U.S. 770, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987) ..................................................................................................................11

*Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L.Ed.2d 128 (1976).............14

*Kalina v, Fletcher*, 522 U.S. 118, 118 S.Ct. 502 (1997) .......................................13

*Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970) ............................................... 11, 12

*Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct. 1092 (1986)..................................14

*Miller v. Prince George's County*, 475 F.3d 621 (4th Cir. 2007)..........................16

*Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749, 1761, 173 L. Ed. 2d 550 (2009) ..12

*Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014) ...17

*Pleasants v. Town of Louisa*, 524 Fed. Appx. 891 (4th Cir. 2013) ........................20

*Putney v. Likin*, 656 Fed. Appx. 632, 2016 WL 3755783 (4th Cir. 2016) ..............20

*Simms v. Constantine,* 113 Md. App. 291, 688 A.2d 1 (1997)................................15

## Statutes

42 U.S.C. § 1983..........................................................................................9

Cts. & Jud. Proc. § 5-522(b) ........................................................................17

Maryland Declaration of Rights Article 26 ..................................................9

Maryland Declaration of Rights Articles 24...................................................9

## **Rules**

Fed. R. App. P. 8 ................................................................................11

Fed. R. Civ. P. 12(b)(6) .....................................................................17

Fed. R. Civ. P. 62(c) .........................................................................11

Fed. R. Civ. P. 8 ...............................................................................19

## INTRODUCTION

The Appellees Edward Michael Nero ("Nero"), Garrett Edward Miller ("Miller"), Brian Scott Rice ("Rice"), Alicia White ("White") and William Porter ("Porter") oppose the Motion for Stay Pending Appeal ("Motion for Stay") filed by Appellant Marilyn Mosby ("Ms. Mosby").

## FACTUAL **BACKGROUND**[1]

1.    Gray's Arrest (Nero, Miller, Rice)

On the morning of April 12, 2015, Baltimore City Police Officers Edward Nero and Garrett Miller and Lieutenant Brian Rice were on bicycle patrol on North Avenue. Rice called for help in pursuing two suspects. Nero and Miller responded.

---

[1]   The Factual Background set forth in this Response is taken directly from Appendix A to the district court's January 27, 2017 Corrected Memorandum and Order Re:  Dismissal Motions (Exhibit 1 to the Motion for Stay) at 47-56. Described as a "Summary of "Facts" as Alleged by Plaintiffs", the district court noted:

> Plaintiffs allege a version of the facts that is by no means undisputed by Defendants. However the Court must, in the instant dismissal context, assume the truth of Plaintiffs' pleading allegations. Therefore, this statement of Plaintiffs' version of the facts, is not intended to, and does not, present any determination as to whether Plaintiffs can present evidence to establish the allegations asserted.

*Id*. at 47.  The citations to the underlying record referenced by the district court in its Summary of Facts have been removed from the Factual Background contained herein,  but can be found in the district court's opinion (Exhibit 1 to Motion for Stay)(Appendix A).

Officer Miller apprehended one of the suspects, Freddie Carlos Gray, Jr. ("Gray") near Mount Street. After detaining and handcuffing Gray "for officer safety reasons," Miller found "a spring-assisted knife" on Gray's person. This knife was illegal under Article 19, Section 59-22 of the Baltimore City Code, which states "[i]t shall be unlawful for any person to sell, carry, or possess any knife with an automatic spring or other device for opening and/or closing the blade, commonly known as a switch-blade knife." Miller arrested Gray for possession of the knife.

During his arrest, Gray "became physically and verbally combative," causing a crowd to form around the Officers and Gray. A police wagon was summoned and arrived driven by Officer Caesar Goodson ("Goodson"). Gray refused to enter the police wagon for transport. Therefore, Nero and another Officer carried Gray to the wagon.

Gray stood on the back step of the wagon as Nero conducted a second search for weapons and then was placed inside the wagon. During this entire encounter, Nero, a former EMT, "did not observe Gray exhibiting symptoms of a medical emergency."

2.    The Transport of Gray

Gray was transported from the scene of his arrest to the Western District police station, driven by Goodson. Goodson made four stops en route.

2

a.  <u>First Stop (Nero, Miller, and Rice)</u>

Once Gray was in the wagon, he "began banging and slamming himself" against the walls of the vehicle while screaming and yelling. In order to avoid the gathering crowds, Goodson moved the wagon one block away to complete paperwork and effectuate the arrest. At this first stop, Miller and Rice removed Gray from the wagon, switched his handcuffs for flex cuffs, and placed leg shackles on Gray because he was "thrashing" around the wagon.

Rice called for back-up because another crowd of onlookers was forming in response to Gray's yelling and banging. Rice, Nero, and Miller had no further interactions with Gray.

b.  <u>Second Stop</u>

Goodson made a second stop near Baker and Mount Streets, but none of the Plaintiffs interacted with Gray at this stop.

c.  <u>Third Stop (Porter)</u>

Goodson stopped a third time at the intersection of Druid Hill Avenue and Dolphin Street. Goodson requested an additional officer to respond to the area. Officer William Porter ("Porter") responded and observed Gray lying prone on the floor of the vehicle. Gray asked Porter for "help." Porter asked Gray, "what do you mean help?" and Gray asked for help in getting off the floor. Porter raised Gray by his arms to a sitting position on the bench. Porter could not fit in the wagon

3

compartment while Gray was inside. Gray did not appear to need medical assistance, but Porter asked him if he wanted medical help. Gray replied that he did, and Ported advised Goodson to take Gray to the hospital. Porter "observed no exigent medical need, and observed Gray to be able to sit upright, breathe and communicate."   Porter knew that "many detainees are trying to avoid being transported to the detention facility" by requesting medical assistance.

### d. Fourth Stop (Porter, White)

Goodson made a fourth stop at North Avenue to pick up a new arrestee, Donta Allen, who was detained by Miller and Nero. There was a call for back-up, to which Porter and Officer Alicia White responded separately. When Porter arrived, he observed Gray kneeling on the vehicle floor and leaning against the bench. Porter spoke to Gray and confirmed that Gray still wanted to go to the hospital. Porter told this to another officer at the scene. When White arrived, she approached Gray in the wagon and attempted to speak with him. She saw him breathing and heard him making noises, but Gray would not answer her, which White concluded was a sign of his non-compliant behavior. White states that Gray did not appear to be in medical distress. No one told her that a medic was needed. Both White and Porter left to go to the Western District station.

e.  Arrival at Western District (White and Porter)

The police wagon arrived at the Western District Station with Gray inside. When Porter reached the station and approached the wagon, he saw that Gray was unresponsive. Porter tapped Gray, but Gray did not respond. Another officer began emergency aid while Porter called a medic. When White arrived at the station, she saw officers removing Gray from the wagon and was told, for the first time, to call a medic. Another officer told White a medic had already been called, but White called to confirm it was en route.

3.  Gray's Death

A medical unit took Gray from the Western District Station to the University of Maryland Shock Trauma Unit where he underwent surgery. On April 19, 2015, Gray died from a spinal cord injury.

4.  The Investigation and Charges

Following Gray's death, State's Attorney Mosby led an independent investigation into the cause of Gray's death conducted by the State's Attorney's Office ("SAO") police integrity unit. According to Mosby, the "findings of [the SAO's] comprehensive, thorough and independent investigation, coupled with the medical examiner's determination that Gray's death was a homicide, . . . led us to believe that we have probable cause to file criminal charges." Plaintiffs allege that Mosby and Major Samuel Cogen of the Baltimore City Sheriff's Office ("Cogen")

5

committed various improper actions that Mosby and Cogen deny. According to Plaintiffs, Mosby and the SAO manipulated, fabricated, and falsified evidence so that Plaintiffs would be arrested and indicted. Mosby, during her investigation, and "with Cogen's complicity and assistance," developed a false and misleading narrative to justify the Statement of Charges and arrest warrant Application ("Application"). This narrative made it seem that Gray had committed no crime, Plaintiffs illegally arrested Gray, purposely neglected to seatbelt him so that he would be injured, and then ignored his medical symptoms and cries for help. Specifically, the Application stated that the knife Gray possessed was "lawful under Maryland law," and made no mention that it was actually illegal under the Baltimore City Code. The narrative omitted exculpatory facts that would tend to show that Gray was uncooperative, did not exhibit outward signs of medical distress, and had tried to injure himself by banging his head on the wagon wall, as well as other omissions. Cogen signed and submitted the Statement of Charges and Application for Statement of Charges to a District Court Commissioner at Mosby's direct or indirect instruction. Cogen allegedly knew that the statements submitted to get the arrest warrants were false and unsupported by any evidence because of his participation in the investigation. On May 1, 2015, Plaintiffs (and Goodson) were arrested and on May 21, 2015, indicted for charges on which no one was convicted.

5.     <u>Mosby's Press Conference</u>

On May 1, 2015, Attorney Mosby held a televised press conference regarding her decision to pursue criminal charges against the Officers. Plaintiffs alleged that during her presentation, Mosby spoke in a "divisive and inciting manner." Mosby quoted from the Application, including the false statement that the knife recovered from Gray was legal, and therefore, Rice, Nero, and Miller lacked probable cause to arrest Gray. Mosby made statements emphasizing her role in the SAO's independent investigation. For example:

> Once alerted about this incident on April 13, investigators from my police integrity unit were deployed to investigate the circumstances surrounding Mr. Gray's apprehension. Over the course of our independent investigation, in the untimely death of Mr. Gray, my team worked around the clock; 12 and 14 hour days to canvas and interview dozens of witnesses; view numerous hours of video footage; repeatedly reviewed and listened to hours of police video tape statements; surveyed the route; reviewed voluminous medical records; and we leveraged the information made available to us by the police department, the community, and the family of Mr. Gray.
>
> We independently verified those facts and everything we received from the police department, so it's a culmination of the independent investigation that we conducted as well as the information we received from the police department.
>
> * * *
>
> I can tell you that from day one, we independently investigated, we're not just relying solely upon what we were given by the police department, period.

Ms. Mosby also made other statements on which Plaintiffs base claims, such as

7

> To the people of Baltimore and demonstrators across America: I heard your cries for 'No justice, no peace.' Your peace is sincerely needed as I work to deliver justice on behalf of this young man. To those that are angry, hurt or have their own experiences of injustice at the hands of police officers I urge you to channel that energy peacefully as we prosecute this case.
>
> * * *
>
> Last, but certainly not least, to the youth of the city. I will seek justice on your behalf. This is a moment. This is your moment. Let's insure we have peaceful and productive rallies that will develop structural and systemic changes for generations to come.

As noted by the district court, the Appellees allege that Mosby made her press conference statements out of improper motives, such as pursuing political ambitions, influencing legislation, and quelling the riots that were taking place in Baltimore at the time.

6.    Grand Jury Presentation

On or about May 21, 2015, the SAO presented evidence before a grand jury to get indictments against the Appellees (and Goodson). Assistant State's Attorney Janice Bledsoe gave Baltimore City Police Detective Dawnyell Taylor, the lead detective in the criminal investigation of Gray's death, a four-page "script" to read in front of the grand jury. This script was "incomplete, misleading, biased, and partially false"; for example, it falsely stated that the arresting Officers tased Gray. Detective Taylor expressed concerns about the document because of its misleading and false information, but she was instructed to read it anyway, and was prevented

8

from responding to jury questions. The grand jury returned criminal indictments against all of the Officers.

7.    Prosecutions

The SAO obtained no convictions on any of the charges arising out of the Freddie Gray incident. In December 2015, Porter's trial ended in a hung jury and mistrial. Nero, Goodson, and Rice had bench trials and were acquitted on May 23, 2016, June 23, 2016, and July 18, 2016, respectively. On July 27, 2016, Mosby entered *a nolle prosequi* in Officers Miller's, Porter's, and White's criminal cases.

## PROCEDURAL BACKGROUND

The Appellees brought claims against Major Cogen and Ms. Mosby for various causes of action, including violations of 42 U.S.C. § 1983, violations of the Maryland Declaration of Rights (Articles 24 and 26), and malicious prosecution. Defamation and false light claims were also brought against Ms. Mosby.

Major Cogen and Ms. Mosby moved to dismiss all of the claims; they alternatively moved for summary judgment. In response to the motions for summary judgment, the Appellees filed motions seeking to be allowed to conduct discovery. On August 26, 2016, the district court denied the motions for summary judgment without prejudice and scheduled a hearing to consider Major Cogen and Ms. Mosby's motions to dismiss. *See* Exhibit 1 (Procedural Order). The Appellees' request for discovery was denied as moot. *Id*.

9

On January 6, 2017, the district court denied in part, and granted in part, the motions to dismiss.  However, Ms. Mosby's motion to dismiss based on a defense of absolute prosecutorial immunity was denied as well as Major Cogen and Ms. Mosby's motions to dismiss based on qualified immunity and/or statutory immunity.

On February 3, 2017, Ms. Mosby filed an interlocutory appeal from the Courts' Order.  Major Cogen did not file any appeal.

On February 6, 2016, Ms. Mosby filed Motions for Immediate Stay Pending Appeal with the district court.  Motion for Stay, Exhibits 4, 5 & 7.   The district court denied Ms. Mosby's request for a stay.   Motion for Stay, Exhibit 8 (Memorandum and Order Re: Stay Pending Appeal).  In denying the Motion for Stay, the district court noted:

> The Court does not, by any means, consider Mosby's appeal to be meritorious.  However, of course, the United States Court of Appeals for the Fourth Circuit will, in due course, resolve the pending appeal.
>
> The Court will note, nevertheless, that even if Mosby were to prevail on every one of her contentions, the instant case would proceed on Plaintiffs' claims against Cogen, and thus discovery involving Mosby would proceed on that basis.

Motion for Stay, Exhibit 8 at 3-4

Ms. Mosby has renewed her Motion for Stay in this Court.  Based on language contained in the Motion for Stay, Ms. Mosby seeks to have the entire

action in district court stayed, including a stay of discovery, even though the claims against Major Cogen claims were not dismissed, were not appealed and remain pending in the district court.

## ARGUMENT

## REQUIREMENTS FOR A STAY PENDING APPEAL

Courts apply the same four factor test when a party seeks a stay of litigation or an injunction pending appeal:

> Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. See Fed.Rule Civ.Proc. 62(c); Fed.Rule App.Proc. 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119, 95 L. Ed. 2d 724 (1987); *See Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) ("a party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay."); *see also Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co*., 550 F.2d 189, 194 (4th Cir. 1977)(referring to *Long* as "another 'strong showing' case").

11

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34, 129 S. Ct. 1749, 1761, 173 L. Ed. 2d 550 (2009). The burden on Ms. Mosby to obtain a stay pending appeal is substantially greater since the district court has already denied her request to stay. *Long*, 432 F.2d at 979 ("Ordinarily, when a party seeking a stay makes application to an appellate judge following the denial of a similar motion by a trial judge, the burden of persuasion on the moving party is substantially greater than it was before the trial judge.").

## LIKELY TO PREVAIL ON APPEAL

### Ms. Mosby Is Not Entitled To Absolute Immunity

Ms. Mosby's absolute immunity argument is grounded in a disagreement with the factual allegations made by the Appellees—an argument that necessarily fails on this appeal from the district court's denial of a motion to dismiss. Specifically, Ms. Mosby contends:

> Focusing on that statement, which does not implicate the actual function Ms. Mosby was engaged in when undertaking the actions at issue in Plaintiffs' claims – her Office's alleged drafting of the Application for Statement of Charges and its marshalling of a peace officer (Major Cogen) to file the Application – the district court improperly concluded that those actions must necessarily have been "investigative" in nature and, therefore, not subject to absolute immunity.

Motion for Stay at 7-8. This argument ignores the Appellees' allegation that Ms. Mosby conducted an investigation, as noted by the district court:

12

> However, Plaintiffs allege that Mosby did not merely evaluate evidence and select the particular facts to include in the Application based on the fruits of an independent police investigation as recognized as acts of advocacy in *Kalina* [*v. Fletcher*]. 522 U.S. [118] at 130, 118 S.Ct. 502 [(1997)]. Rather, Plaintiffs allege, Mosby acted as an investigator engaged in the gathering (and fabricating) of evidence.

Motion for Stay, Exhibit 1 (Corrected Memorandum) at 37; See also Motion for Stay, Exhibit 4 (Amended Complaint) at ¶¶ 78 ("The State's Attorney went outside the scope of her employment, as a State's Attorney by acting in an investigatory capacity that formed the basis for the charges brought against the Plaintiffs [and] allegedly did an investigation wherein it manipulated evidence to facilitate indictments of the Plaintiffs and other officers.").

The Supreme Court held in *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993) that "[i]n determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a 'functional approach,' *see, e.g., Burns [v. Reed]*, 500 U.S. [478] at 486, 111 S.Ct., 1934 at 1939 [(1991)], which looks to 'the nature of the function performed, not the identity of the actor who performed it,' *Forrester v. White*, 484 U.S. [219] at 229, 108 S.Ct. [538] at 545 [(1988)]." *Buckley*, 509 U.S. at 269, 113 S. Ct. at 2613.

13

Prosecutors did not enjoy absolute immunity when acting in an investigatory capacity. The Supreme Court identified exceptions to prosecutorial immunity in *Buckley*, which involved issues of a prosecutor's involvement in an investigation and statements made by the prosecutor during a press conference.

> [A]s the function test of *Imbler* [*v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L.Ed.2d 128 (1976)] recognizes, the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity "'represents the norm'" for executive officers*, Malley v. Briggs*, 475 U.S. [335], at 340, 106 S.Ct. [1092] at 1095 [(1986),, *quoting Harlow v. Fitzgerald*, 457 U.S. [800], at 807, 102 S.Ct. [2727], at 2732 [(1982)], so when a prosecutor "functions as an administrator rather than as an officer of the court" he is entitled only to qualified immunity. *Imbler,* 424 U.S., at 431, n. 33, 96 S.Ct., at 995, n. 33. There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."

*Buckley*, 509 U.S. at 273, 113 S. Ct. at 2615-16. Accordingly, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274, 113 S. Ct. at 2616.[2]

---

[2]  Moreover, "[a] prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial.

Prosecutors also do not have absolute immunity when providing legal advice to law enforcement officers. *Burns v. Reed*, 500 U.S. at 494, 111 S. Ct. at 1943. ("[I]it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice."). *Goldstein v. Moatz*, 364 F.3d 205, 214 (4th Cir. 2004) ("In *Burns*, the Court confirmed the distinction between investigative and advocative activities in deciding whether absolute immunity should be accorded a prosecutor who provides legal advice to police officers concerning probable-cause issues or to a prosecutor's participation in a probable-cause hearing.")

Ms. Mosby is not entitled to absolute immunity to the Plaintiffs' § 1983 claims as the Appellees have alleged that she undertook investigatory actions and provided legal advice that are outside the prosecutorial "advocate" function. Her claims to absolute immunity under the Maryland state based claims similarly fail.[3]

---

When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same." *Buckley*, 509 U.S. at 276, 113 S. Ct. at 2617.

[3] *Simms v. Constantine,* 113 Md. App. 291, 304, 688 A.2d 1, 7 (1997) (discussing *Imbler*, *Burns* and *Buckley* and affirming denial of absolute immunity by prosecutors based on allegations that "the two prosecutors 'manipulated evidence and, in effect, 'falsified evidence' against the three plaintiffs so as 'to ensure that an indictment against them would be forthcoming" and engaged in investigations).

15

## Ms. Mosby Is Not Entitled To Qualified Immunity

Ms. Mosby argues that she is entitled to qualified immunity because a Magistrate issued arrest warrants for the Appellees. That argument is entirely without merit given the Appellees' allegations that false and incomplete information was provided to the Magistrate who issued the arrest warrants:

> A magistrate's issuance of the warrant will not shield an officer when the warrant affidavit is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," id., nor will it shield an officer when the underlying affidavit includes deliberate and reckless misstatements and omissions, as here[.]

*Miller v. Prince George's County*, 475 F.3d 621, 632, (4th Cir. 2007)(citations omitted). *See Graham v. Gagnon*, 831 F.3d 176, 183 (4th Cir. 2016) ("[W]e have repeatedly held that arrest warrants do not confer immunity if it was objectively unreasonable to conclude there was probable cause for the arrest.").

"An investigation need not be perfect, but an officer who intentionally or recklessly puts lies before a magistrate, or hides facts from him, violates the Constitution unless the untainted facts themselves provide probable cause." *Miller*, 475 F.3d at 630–31. The material false and misleading statements submitted by Ms. Mosby are detailed in Appendix B (The Franks Analysis) in the district court's Corrected Memorandum. See Motion for Stay, Exhibit 1 at 57.

16

At this stage of the litigation,[4] Ms. Mosby has not demonstrated a strong likelihood that she would succeed on a qualified immunity defense.

### Ms. Mosby Is Not Entitled To Statutory Immunity

Ms. Mosby argues that she should retain statutory immunity because "a prosecutor's *verbatim* recitation of what was stated in a criminal charging documents [and] the remainder of the contextual statement made at a press conference…are consistent with the kind of public statements that prosecutors, in the exercise of their discretion and authority make." Motion for Stay at 17. Whether actions are, or are not consistent, with a state personnel's job description is irrelevant. State personnel lose statutory immunity when they act with "gross negligence." Cts. & Jud. Proc. § 5-522(b). *See Cooper v. Rodriguez*, 443 Md. 680, 708 (2015) ("We have viewed gross negligence . . . as something more than simple negligence, and likely more akin to reckless conduct; gross negligence is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.")

---

[4] "A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but,…when asserted at this early stage in the proceedings, "the defense faces a formidable hurdle" and "is usually not successful." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014)(citation omitted).

The Appellees allege that Ms. Mosby made statements at the press conference knowing that the statements were false. *See, e.g.*, Exhibit 2 to Motion to Dismiss at ¶ 151. For example, Ms. Mosby stated at the press conference that the knife was in Mr. Gray's possession was legal (even though she knew the knife was illegal under Baltimore City law), and stated that no probable cause existed to arrest Mr. Gray (even though she knew that the illegal knife supplied probable cause to arrest Mr. Gray and that her office has several pending cases against persons charged with possession of similar spring-assisted knives). *Id*. at ¶ 66-70.

Making public statements claiming that persons engaged in unlawful conduct, while knowing information and facts that prove the conduct was lawful, constitutes the type of "reckless conduct" that precludes any reliance on Maryland state statutory immunity.

Ms. Mosby's argument regarding any claim to statutory immunity is unsupportable and utterly fails to meet her burden to establish that she will likely to succeed on the appeal on that issue.

### MS. MOSBY WILL NOT SUFFER IRREPARABLE HARM

The Supreme Court has noted that the "right to immunity is a right to immunity *from certain claims,* not from litigation in general." *Behrens v. Pelletier*, 516 U.S. 299, 312, 116 S. Ct. 834, 841, 133 L. Ed. 2d 773 (1996) (emphasis in original). Even "'where an appeal is allowed from an interlocutory order, the

18

district court may still proceed with matters not involved in the appeal.'" *Alice L. v. Dusek*, 492 F.3d 563, 564–65 (5th Cir. 2007) (citation omitted).

Ms. Mosby claims that she will suffer irreparable harm if <u>any</u> discovery in the district court is allowed while her appeal is pending in this Court.

Aside from Ms. Mosby's failure to establish a strong likelihood of success on her appeal, the district court has not authorized "disruptive discovery." Rather, the court has created a two stage discovery plan, with the first stage being a limited amount written discovery. *See* Motion for Stay Exhibit 9 (Discovery Plan). Moreover, from a practical perspective, most of the discovery will be directed to information that will be supplied by the State's Attorney's Office, not directly by Ms. Mosby.

Even in the unlikely event that Ms. Mosby were successful on her appeal, the claims against Major Cogen remain pending and would require Ms. Mosby to participate in discovery because she and her office provided information, including the results of her investigation, to Major Cogen before the filed the Application for Statement of Charges.

Ms. Mosby's reliance on *dicta* in *Ashcroft v. Iqbal*, 556 U.S. 662, 686, 129 S. Ct. 1937, 1953–54, 173 L. Ed. 2d 868 (2009) is misplaced. *Iqbal* involved whether a complaint met the pleading requirements of Federal Rule of Civil Procedure 8. The Supreme Court "decline[d] [the plaintiff's] invitation to relax the

19

pleading requirements on the ground that the Court of Appeals promises petitioners minimally intrusive discovery." *Id.*, 556 U.S. at 686. The issue of discovery—however limited—was not relevant since the plaintiff's complaint could not overcome the pleading requirements of Rule 8. *Id.* ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.").

*Iqbal* cannot be read to preclude any discovery when absolute or qualified immunity is alleged, a position that is inconsistent with Fourth Circuit case law. *See Putney v. Likin*, 656 Fed. Appx. 632, 640–41, 2016 WL 3755783 (4th Cir. 2016); *Pleasants v. Town of Louisa*, 524 Fed. Appx. 891, 894–95 (4th Cir. 2013) (noting that "the district court permitted limited discovery and considered this evidence in holding that [defendant officer] was entitled to qualified immunity.").

Ms. Mosby has not demonstrated that she will be irreparably harmed if limited discovery is allowed in the district court.

## <u>APPELLEES WILL BE HARMED BY A STAY</u>

The Appellees face harm if discovery is stayed for an extended period of time while the case proceeds through the appellate process. Memories of witnesses can fade; persons who were involved in the Police Department's investigation and the Office of the State's Attorney could move to other employment or move out of State; documents could be misplaced or accidently destroyed—especially any

20

documents such as emails that might be maintained only in an electronic form. The Appellees do not mean to suggest that their potential harm is extraordinary, only that this potential harm cannot be so readily ignored as Ms. Mosby does in her analysis.

## PUBLIC INTEREST

While the immunities asserted by Ms. Mosby are no doubt important, the public interest analysis weighs in both directions. The limited discovery contemplated by the Court does not place such a significant burden on Ms. Mosby that a significant public interest is implicated, especially given that this discovery would otherwise be necessary relative to the claims against Major Cogen. On the other hand, the public interest does also support the Appellees' right to have their claims vindicated and certainly not be left in a position where significant information and documents could be lost as the appeal remains pending in the Fourth Circuit.

## CONCLUSION

Evaluating these four factors, Ms. Mosby has not met her burden of establishing that the district court litigation should be stayed until resolution of her interlocutory appeal. Accordingly, her Motion for Stay the district court litigation should be denied.

Respectfully submitted,

/s/_____
Joseph T. Mallon, Jr.
Mallon & McCool, LLC
300 East Lombard Street, Suite 815
Baltimore, Maryland 21202
Phone: (410) 727-7887
Fax:    (410) 727-4770
jmallon@mallonandmccool.com

*Counsel for Appellees Edward Michael
Nero and Garrett Edward Miller*

/s/_____
Andrew J. Toland III
Federal Bar No. 05057
Toland Law LLC
P.O. Box 1130
Sparks, Maryland 21152
Phone: (410) 499-5656
andytoland@msn.com

*Counsel for Appellees Edward Michael
Nero and Garrett Edward Miller*

/s/_____
David Ellin
Law Office of David Ellin PC
154 Westminster Pike
Reisterstown, Maryland 21136
(410) 833-0044
(410) 833-0442 (fax)
dellin@ellinlaw.com

*Counsel for Appellee Brian Scott Rice*

/s/_____
Brandy A. Peeples
Law Office of Brandy A. Peeples, P.C.
47 East All Saints Street
Frederick, Maryland 21701
410-327-9614 (telephone)
866-277-7137 (facsimile)
brandy@peeples-law.com

*Counsel for Appellee Brian Scott Rice*

/s/_____
Michael E. Glass
The Michael Glass Law Firm
201 N. Charles Street, Suite 1901
Baltimore, Maryland 21201
(410) 779-0600
(410) 814-4604
mglass@mglasslaw.com

*Attorney for Appellees Alicia White
and William Porter*

22

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of April 2017 a copy of the

foregoing Response to Motion for Stay Pending Appeal was served in accordance

with CM/ECF system established by this Court on:

> Karl A. Pothier, Assistant Attorney General
> Elise Marcela Balkin Ice, Assistant Attorney General
> 120 West Fayette St., 5th Floor
> Baltimore, MD 21201
> 410-230-3135
> karl.pothier@maryland.gov
>
> *Attorneys for Appellant Marilyn Mosby*

_____/s/_____
Andrew J. Toland III

Certificate of Compliance With Type-Volume Limit,
<u>Typeface Requirements, and Type-Style Requirements</u>

      1.    This document complies with the word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), this document contains 5196 words.

      2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font Times New Roman.

_____/s/_____
Andrew J. Toland III
*Counsel for Appellees Edward Michael Nero and Garrett Edward Miller*

Dated:  April 7, 2017